is Adores of the Blood of Christ v. FERC. May it please the Lord, good morning, your honors. My name is Dwight Yoder. I'm the Adores of the Blood of Christ v. FERC. I'd like to reserve three minutes of my time for rebuttal. I'd like to start by highlighting the importance of the Religious Freedom Restoration Act, passed in 1993. This is one of the last acts that I can remember that actually has significant bipartisan support. I think the panel is pretty well aware of that super statute and its import. So your time is probably better spent to address the issues that you've raised. Let me move directly then into our main argument. I also want to address the letter that was sent to me by the clerk asking counsel to be prepared to discuss. The Religious Freedom Restoration Act is a statutory enactment. That means that the court analysis begins and in our estimation ends with the plain language of the statute. And we think that that applies to this case and that the statute on its face is clear and unambiguous. Is at the heart of this case the term judicial proceeding and what that means, what that section is the heart of this case. I think you have to look at it in the context of the entire section. Assert a claim in a judicial proceeding for all appropriate relief. That is not judicial review at appellate level. That is a cause of action in the third circuit. So if Congress had intended to limit judicial proceeding in the way you are suggesting, why didn't it simply say trial court? Well, they did say judicial relief as part of that section and judicial proceeding. But what they said was assert a claim. And the clerks that have looked at this have indicated that that involves the full panoply of remedies, the full process of a trial. So you cannot assert a claim in an appellate proceeding, in an appellate argument? Not as set forth under the Religious Freedom Restoration Act. It doesn't say file. You can't assert a claim before us? If what we are all participating in here, the filing of briefs to the oral argument here is not a judicial proceeding, what is it? I don't disagree that it's a judicial proceeding. Of course, to a certain extent, anything in court is a judicial proceeding. But that has to be looked at in the context of what has been argued by FERC and Transcontinental Gas Pipeline. Then don't we have to ask, and don't you have to explain, and we have to be concerned about, what characteristics of a judicial proceeding are not available here before an appellate panel? Well, it depends on how it gets to this panel. If it goes to the Natural Gas Act, so you deal with two statutory enactments. The court's jurisdiction and what it can do under the Natural Gas Act is controlled by the Natural Gas Act. So what the argument is, is that the Commission, FERC, has exclusive jurisdiction to decide a RFRA claim. That on its face makes no sense. In the first instance, then there's appellate review. But there is no RFRA claim that exists. There's no substantial burden that has occurred. This is an application to an agency. Could your clients not be in a proceeding before the agency, if they had acted, have raised a RFRA issue? They could have raised a RFRA objection, certainly. So there isn't, in this case, besides your clients chose to sit on their rights, correct? Not at all. RFRA, look at the purpose. Look at the purpose of RFRA. The purpose actually has nothing to do with it, right? I mean, what it has to do with is process. And what I'd like you to tell me is, what is it that you could not bring before FERC that you believe you are destined to or could bring before the district court? Because my understanding is, any type of claim, RFRA or other, based on the regulatory and statutory framework, could be heard in the first instance by the agency. And then the aggrieved party could appeal to this court. So tell me, what could not be heard in the fashion that I've just described that could be heard in what you propose? And if I may, I'd like to just preface my answer with this thought, which is, RFRA places a burden on the government to not substantially burden. Now, counsel, a thought is not an answer to a question. But I'm getting to the answer, which is, they could not assert a claim that had not yet occurred. They could raise an objection. But it's not, RFRA does not require an individual. If you had raised the objection, would that not have preserved your ability to hear the resolution of that objection before this court? It would have preserved the right for this court, under the standards of the Natural Gas Act, to review FERC's certificate decision. Which decision could have, had it been raised, considered a RFRA claim and or objection raised by your client? It could have considered an objection that there is no claim. It hasn't occurred. My understanding, and maybe I'm wrong, maybe this is where you can clarify this for me. My understanding is that the adorer's objection has always been, always being from whenever it was first articulated, raised as a claim, as an objection, whatever. That their religious practice is to protect, preserve, and treasure the land that the adorers own, recognizing the interconnectedness and oneness that humans have with creation. Now, that would have been impinged upon from the very moment that some activity was undertaken by the pipeline company to begin a process through, under the NGAA, right? And through FERC. With all due respect, I do not agree with that. Because this is an application for a permit. If FERC doesn't approve it, the only way transcontinental becomes... Others showed up to interpose objections for various reasons. I'm sorry? Others, implicated by this pipeline, showed up to interpose objections of various kinds, did they not? They did. The adorers did not, right? They expressed their concerns to Transco. They did not show up and become a party to the FERC for administrative proceedings. That is not disputed. You keep focusing on the fact that you have this RIFRA claim and somehow it didn't come to fruition until some point in time later. Chief Judge Smith has told you that it was there. I'm still waiting for you to tell me. You have a RIFRA claim. You say it wasn't ripe. Wouldn't it be right when you got to this stage and then we could deal with it? I'm not getting it. What argument could we not deal with here if we followed the process as set forth? Well, I think there's a couple of things that this court wouldn't be able to do. First of all, I don't think... I think its ability to provide relief under the Natural Gas Act is limited to affirming or reversing the certificate. If we reversed the certificate based on your RIFRA argument, wouldn't that be the relief that your clients seek? And so how are your clients prejudiced by not following the process that's been set out? I think they're prejudiced because if they aren't allowed to pursue a claim once... This is a third party, not the applicant, whose rights are being affected. So, in other words... If there's no certificate, there's no pipeline, right? That is correct. So how are the endurers then prejudiced? What I'm saying is... What the plain language of RIFRA says is that you can bring a claim when your rights have been substantially burdened. How have their rights been burdened if there's no certificate and no pipeline? I'm sorry? How have their rights been burdened if there's no certificate and there's no pipeline? Well, they haven't in that case. That's correct. So all they had to do was show up, interpose objection at a proceeding, make whatever record they could possibly make... And if the ruling went against them, appeal, as has occurred here, to this court. And, I might add, I'm sure you're aware... If the record is inadequate before FERC, this court has the authority, under 717, to send it back and ask for more findings to induce additional evidence. With all due respect... Plenty of process. I think that turns RIFRA on its head. RIFRA was there to prevent the government from substantially burdening a religious practice. It only turns it on its head if you are correct as you seem to be suggesting that you have a right in the first instance to a trial court. Right? What I'm suggesting is the Natural Gas Act, exclusive jurisdiction for the Commission to decide the RIFRA claim, is inconsistent with the plan... Well, then, if not FERC, under the Natural Gas Act, who? A trial court, right? I'm sorry? The FERC? If not, before FERC, under the Natural Gas Act, then you have to be suggesting it's before a trial court. That's correct. I think that trial court might be... That was my craziest question. Right. Our argument isn't that FERC couldn't consider it and that this court couldn't review it. Our argument is the adorers still had the right, under the plain language of the Act, to go and assert a claim and the district court had jurisdiction. Where in any statute is there even a suggestion that there is the right to such seemingly duplicative process? It's not a duplicative process. The FERC process is looking at the pipeline. They are not there to adjudicate RIFRA claims. RIFRA, as it stands, imposes an obligation on FERC to approve pipelines and transco to do it in the manner consistent with RIFRA. I don't dispute that FERC shouldn't be adjudicating RIFRA claims. You don't dispute, however, that they can make factual determinations upon which a RIFRA claim might sound, right? It might be framed. It then might be considered by an appellate panel. They can. I mean, they have what they call paper hearings, which is a public meeting where people just come and they stand up and say, these are our concerns and that's their hearing. But certainly they can consider any objection that comes before them. But just because an agency can consider it does not foreclose the right under RIFRA. Is your argument at bottom that you believe Francis was wrongly decided and that we should revisit that decision? I think Francis was a 2007 decision. I do not think it controls this case. It's a Title VII case. And the legislative history that it relied upon, I think there is a lot of extraction out of context. And so the short answer to your question is I'm not sure this Court has to overturn it, but it's limited to the Title VII context at best. Even if we don't have to overturn it, isn't it strongly suggestive for this panel, since all three members of that Court, the two members in the majority opinion, agreed with Judge Stapleton's approach in his concurrence? Well, I'm not sure Footnote VII indicates that there was the concurrence, that the majority joined into the concurrence. But you're correct that the majority decision, which essentially held that the other two judges agreed with Judge Stapleton. Well, they did. It said we do not disagree, I think was the language. I'm not sure why there was that. Negative gets you a positive. That's right. Two negatives get you a positive. I don't disagree with that. Let me just point out a few things about Francis. Very briefly. Okay. And we'd be happy to submit additional briefing on Francis if that's helpful for the Court. There is a decision out of the Fifth Circuit. It's called Tagore v. United States and involves a RFRA and a Title VII claim, 735F3-324. In that case, the Court allowed both a separate RFRA claim and a Title VII claim. All right, but a Fifth Circuit opinion is not about to even undermine a Third Circuit opinion. I don't disagree with that. We'll have you back on rebuttal. We have gone beyond your time in the red light. We'll have you back on rebuttal, Mr. Yoder. Ms. Chu. May it please the Court, Susanna Chu for the Commission. Your Honors, you're right in observing that there is a process in place here that was available to the adorers, and under Francis, RFRA does not provide an exception to that congressionally mandated process. The claim could have been heard here in the first instance by the agency, and the agency would have taken it very seriously. In Francis, we concluded that there actually was jurisdiction. The case was resolved on the basis of the exhaustion requirement being appropriate and interacting with RFRA. Are you suggesting that we should be looking to affirm here on an alternative basis, or is your argument that given the different language and requirements at the NGA, that there is a jurisdictional requirement that we should recognize here? Your Honor, I believe that this district court decision could be affirmed under either 12b-1, which is the rule that the district court decided it under, or under 12b-6 as it was decided in Francis. The Natural Gas Act issue here actually presents an even stronger case for dismissal than the Francis case because, of course, that case involved Title VII, and the Francis court pointed out early on in the decision that the exhaustion requirement under Title VII is actually not jurisdictional. Here we do have a statute with a exclusive jurisdictional component that divests the district court of jurisdiction. So that wasn't the case in Francis, but it is the case here, that district courts are divested of jurisdiction over any claims involving the siting of a natural gas pipeline. Mr. Yoder has posited two views that there could not be a meaningful review through an appellate proceeding alone. One is that damages are not available, and one is that given the practice of using tolling orders, that there may be circumstances, again, neither of these appear to be present here, but that there may be circumstances where construction would begin, therefore burdening the free exercise rights of a claimant before there was even a federal court review available. Could you address those two circumstances, and do they in fact present problems in a claimant's ability to exercise their rights under RFRA as well as the Constitution? Sure, Your Honor. I don't think either of those issues are presented here, because there was an opportunity for the adorers to present the issue to the agency, and they chose not to avail themselves of the process. So absolutely, there was a meaningful opportunity for the adorers to have their claim addressed by the agency in the first instance and then by this court on review of the agency's decision. With respect to damages, I'm not entirely clear what the argument is from the adorers' side. In terms of damages, if the adorers were seeking damages against the agency, there would be a sovereign immunity issue. I believe the sovereign immunity would bar damages against the federal government and against any official suit in their official capacity. With respect to the tolling order issue, Your Honor, that has been an issue in other cases. In theory, yes, construction could begin after the issuance of a FERC certificate order and before a court of appeals addresses the final agency action as expressed in the hearing order. But all the courts that have reviewed the issue have found the commission's use of tolling orders to be lawful and permitted under the Natural Gas Act. Does the commission disagree with the proposition that if that circumstance were to take place, that given the language of Thunder Basin and its reliance on Matthews v. Eldridge, that there would be a collateral claim, that is, under those circumstances, there would be available a procedural due process claim separating the part from a RFRA claim if a stay or injunction were necessary? I think, Your Honor, in that circumstance, the court of appeals would have authority and jurisdiction to consider a stay of construction. It would have the jurisdiction to order such a stay pending appellate review of the decision. So I think that that issue would be addressed. More to the point, as a procedural due process claim, would that be available in any event at the district court level? That's a different claim than a RFRA claim, per se. In that situation, Your Honor, I don't believe so. I think any procedural due process claim could be addressed by the court of appeals at the conclusion of agency proceedings. And I know that the courts of appeals have addressed due process claims at the conclusion of agency proceedings. It may be helpful to consider the Ninth Circuit Snoqualmie case here. That case, while certainly not binding, is helpful because it illustrates how the process is supposed to work. There, the agency considered a RFRA claim that was raised by the Snoqualmie Indian Tribe in the relicensing process for a hydroelectric project. And there, the agency considered the claim that the project would divert water away from the falls such that the mist at the falls would be diminished and thus diminishing the spiritual experience of the tribe. So the agency took this claim very seriously and actually imposed license conditions that would increase the mist at the falls and thus accommodated the religious concern. What happened then at the conclusion of the agency proceedings is that the tribe petitioned for review in the Ninth Circuit and said actually the entire project should be decommissioned. That's the only thing that would resolve the religious objection. And on the other hand, the licensee for that project objected that the commission should not have imposed this additional requirement to accommodate the religious practice. The Ninth Circuit reviewed all of the record evidence, reviewed the agency's determination, and said that the agency's accommodation was reasonable. So I think it's just helpful. The agency made some determinations there, however, which the Ninth Circuit approved, and which I frankly find a little troublesome. Mr. Yeutter is absolutely correct. It refers to super statute. It has a great reach. But in Snoqualmie, FERC made some determinations which went as far as whether or not there was substantial burden. Treating that as a finding of fact, which I'm not sure it is, seems to me at the very least it's a mixed question of fact and law over which FERC has absolutely no competency whatsoever. So your use of Snoqualmie for our purposes, because speaking only for myself, it didn't seem to be necessary for you to have to resort to Snoqualmie. I understood, Your Honor. I thought it might be helpful as an illustration of a case in which a tribe had a particular religious objection and brought the objection to the agency. It just illustrated how the process has worked in the past. Just remind me, in the case you just mentioned, was there a, I presume there was a stay in place until the 9th Circuit resolved it? Your Honor, I'm honestly not sure if there was a stay in place. But that case involved a hydroelectric project that was already operating. It was a relicensed decision. So probably it was operating as it had been before during the course of the appeal. Let me just be clear. The only reason I pushed back on Snoqualmie, note to FERC, I have serious reservations about FERC's competency to make the determinations that were made there and approved by the 9th Circuit. Understood, Your Honor. But here I don't think it's necessary for the Court to address Snoqualmie. I think Francis answers the question that RFRA does not provide an exception to the Natural Gas Act's processes. And the agency would have taken these concerns very seriously had it had the opportunity to do so. Thank you very much. Thank you, Your Honor. Ms. Whitmer? May it please the Court, my name is Elizabeth Whitmer. On behalf of Transcontinental Gas Pipeline, I apologize. I've had a court this week, so my voice may be a little squeaky. With regard to the waivers that have occurred here, you've already referenced that the adorers sat on their rights with regard to their ability to bring their objection to FERC. They also sat on their rights in the subsequent eminent domain proceedings. And we should not lose track of the fact that, in fact, after Transco received the order, it filed a complaint in condemnation against the adorers. The adorers had the right to answer that complaint. Under Rule 71.1, if they failed to answer, then they waived all defenses. In this case, the adorers failed to answer. They did not assert RFRA as a defense. And, in fact, you'll note that there's no reference throughout any of the briefs of adorers to the fact that all RFRA guarantees is a claim or defense. And, ultimately, the lower court, in the condemnation proceedings, entered an order finding that Transco had the ability to possess the land. Now, what the adorers seek in the complaint they filed under RFRA is permanently enjoining Transco from taking possession. But possession had already been determined in the lower court in an order that was not appealed. How do you mean possession? In fact, pursuant to the condemnation proceedings? Pursuant to the condemnation proceedings. No, more than that. I mean, once a notice of taking has been filed, title transfer is first, right? Well, no, actually. Not under federal condemnation practice. All right. Under state condemnation practice, which is when that happens. I thought that that was also a provision in the federal law. No, actually. So that's why there is an opportunity to present a defense. Under Rule 71.1, when a condemnation complaint is filed, there is no automatic grant of possession the way there would be under Pennsylvania's eminent domain statute. Under Pennsylvania, title transfers, but physical possession does not. You have to wait for preliminary objections. Under the federal practice, nothing transfers upon the filing of the complaint. If you do the entire complaint process, it would take the normal year, and possession and title would not transfer until after the determination of compensation. Especially given that circumstance, and I realize this is not something that's raised, but why is TRANSCO an appropriate defendant here? How is it a state actor? Well, TRANSCO is a state actor in the sense that it is the holder of a certificate of public convenience and necessity. And as a holder of a certificate under the Natural Gas Act, it has the ability to condemn. As a private party, it would not have the ability to condemn. We have not held that a private party exercising eminent domain rights thereby becomes a state actor. You've conceded that for purposes of this case? I don't think it matters for purposes of this case, because I think that the case should have been dismissed because of the 12B1 grounds that the lower court decided. It can also be dismissed because of the 12B6 grounds in Francis B. Mineta, because of the lack of exhaustion. So my point in referencing the condemnation proceedings is only that there is a final order in place as to possession in favor of TRANSCO and against the adorers. As discussed in the briefing, there was a hearing before that order was issued. Other landowners were involved in that hearing. It was an omnibus motion for possession against five landowners. Four of them had asserted defenses and appealed. And those appeals are pending here in the Third Circuit. One did not, and that's adorers, because they had to waive their defenses. So if you were to find that somehow they could bring this separate RFRA claim, the relief they're seeking would conflict with an order that is final as to them and an order that they did not appeal. And that judicial finality concern is not something that is eviscerated by RFRA. They had the opportunity to present a defense, and they chose not to. Therefore, you know, they have simply waived all of their rights. There are some waiver cases involving RFRA when the court raised Francis B. Mineta. It prompted this question. And so I would direct the court to a case that we did not cite in our materials, but that addresses the question of, in fact, whether one can waive a RFRA claim. And that case is Hankins v. Light. It's in the Second Circuit, 441 F. 3rd, 96. It's particularly notable because there's a dissent in that case written by now Justice Sotomayor. Both the dissent, Justice Sotomayor and the majority agreed that, in fact, RFRA can be waived and cited to decisions in other circuits where that had occurred. I see you're about out of time. Thank you. Thank you very much. Mr. Yoder, rebuttal. Mr. Yoder, this is, I guess, more curiosity than anything, but Ms. Whitmer has just pointed out that there were five landowners, four of whom interposed objections and have gone as far as to appeal to this court. Was there any kind of failure of notice here to the adorers? I recall from reading in the papers that the mother house or another part of the adorers is in St. Louis or somewhere out in the Midwest. It seems odd that the religious interest in this property was such that they did not somehow actively intervene. And, I mean, we're not without sympathy to any kind of deficiencies in process or for that matter the fact that someone truly and sincerely interested, and no one questions that, did not more actively participate than what occurred on the part of others. My understanding is that there was not a deficiency in the notices, that the standard FERC notices didn't make it to the adorers and that they were in touch with Transco and expressed to them their objections and that they would not. But I think it goes to the point of the notice never says, if you have religious objections, you have a right to come to FERC. And it goes to the bigger point that we set forth in our reply brief. What is being asked here is for a third party to prospectively protect against a agency or a private company that is endowed with the power of eminent domain, which Judge Krauss, I think there is case law that suggests once a private party uses it in a domain, they act under color of law and become subject to RFRA. There's nothing in the legislative history or in the plain language of the statute that says a person has to proactively try and prevent the government from substantially burdening their religious rights. That's not what it says. It says specifically that the government shall not substantially burden a person's free exercise. And if I could just quickly talk about Francis. And I would like the opportunity to submit a short letter brief because there's so much in Francis that is relying on the legislative history. The legislative history, when you dig into that, the excerpts that were quoted in Francis seem to leave an impression that RFRA did not affect other areas of the law. When you look at exactly what was changed in RFRA, it was to address certain concerns about tax-exempt status related to religious organizations, benefits, and also abortion-related services and whether RFRA would affect that. In fact, there was a companion bill to RFRA that tried to address these concerns. And finally, I would just note, what you're dealing with in Francis is you are dealing with an agency, Title VII, who has been charged to deal with accommodations of religious beliefs in the employment setting. That is not what FERC is about. And they deal with post-discrimination conduct. So you go into EEOC after an employer would violate an employee's rights. There's a case law that suggests if the EEOC pursues a claim on behalf of an employee against an employer, the employer can raise a RFRA defense against the EEOC. In Francis, the Transportation Security Authority was the federal agency that did the discrimination, not EEOC. However, if EEOC brought the claim against the employer, the employer can actually raise a RFRA claim. Title VII does not supplant RFRA. And again, I would urge the court to look at the, I know it's the Fifth Circuit, but it allows both a RFRA and a Title VII claim. Thank you very much, Mr. Yoder. Mr. Yoder, we'll allow you to submit, if you wish, a very brief supplemental, by which I mean seven pages. Thank you. All right. Thank you. Do you have an opportunity to reply? What I'd like is that the seven pages submission be filed and that the respondents, the appellees rather, have an opportunity to respond within ten days, if they wish. Thank you. That is our requirement. Thank you very much.